Cartter, C. J.,
delivered the opinion of the court:
These cases, involving the same questions, are presented together.
As shown by the plaintiffs’ brief, the plaintiffs claim the elective franchise under the first section of the fourteenth amendment of the Constitution.
The fourth paragraph of the regulations of the governor and judges of the District made registration a condition precedent to the right of voting at the election of April 20, 1871.
The plaintiffs, being otherwise qualified, offered to register, and were refused. They then tendered their ballots at the polls, with evidence of qualification and offer to register, &c., *175 when their ballots, were rejected under the seventh section of the act providing a government for the District of Columbia.
Mrs. Spencer brings her suit for this refusal of registration, and Mrs. Webster for the rejection of her vote, under the second and third sections of the act of May 31, 1870.
The seventh section of the organic act, above referred to, limits the right to vote to "all male citizens;” but it is contended that, in the presence of the fourteenth amendment, the word male is without effect, and the act authorizes “ all citizens ” to exercise the elective franchise.
The question involved in the two actions which have been argued, and which for the purposes of judgment may be regarded as one, is whether the plaintiffs have a right to exercise within this jurisdiction the elective franchise. The letter of the law controlling the subject is to be found in the seventh section of the act of February 21, 1871, entitled «An act to provide a government for the District of Columbia,” as follows:
“And l)e it further enacted, That all male citizens of the United States, above the age of twenty-one years, who shall have been actual residents of said District for three months prior to the passage of this act, except such as are non aompos mentis and persons convicted of infamous crimes, shall be entitled to vote at said election in the election district or precinct in which he shall then reside and shall have so resided for thirty days immediately preceding said election, and shall be eligible to any office within the said District, and for all subsequent elections twelve months’ prior residence shall be required to constitute a voter; but the legislative assembly shall have no right to abridge or limit the right of suffrage. ”
It will be seen by the terms of this act that females are not included within its privileges. On the contrary, by implication they are excluded. We do not understand that it is even insisted in argument that authority for the exercise of the franchise is to be derived from law. The position taken is' that the plaintiffs have a right to vote independent of the law; e^en in defiance of the terms of the law. The claim, as we understand it, is that they have an inherent right, resting in nature, and guaranteed by the Constitution in such *176 wise that it may not be defeated by legislation. In virtue of this natural and constitutional right, the plaintiffs ask the' court to overrule the law, and give effect to rights lying behind it and rising superior to its authority.
The court has listened patiently and with interest to ingenious argument in support of the claim, but have failed to be convinced of the correctness of the position, whether on authority or in reason. In all periods and in all countries, it may be safely assumed that no privilege has been held to be more exclusively within the control of conventional power than the privilege of voting, each state in turn regulating the subject by the sovereign political will. The nearest approach to the natural right to vote or govern — two words in this connection signifying the same thing — is to be found in those countries and governments that assert the hereditary right to rule. The assumption of divine right would be a full vindication of the natural right contended for here, provided it did not involve the hereditary obligation to obey.
Again, in other states, embracing the republics, and especially our own, including the States which make up the United States, this right has been made to rest upon the authority of political power, defining who may be an elector, and what shall constitute his qualification 5 most States in the past period declaring property as the familiar basis of a right to vote; others, intelligence 5 others, more numerous, extending the right to all male persons who have attained the age of majority.
While the conditions of the right have varied in several States, and from time to time been modified in the same State, the right has uniformly rested upon the express authority of the political power, and been made to revolve within the limitations of express law.
Passing from this brief allusion to the political history of the question into the consideration of its inherent merits, we do not hesitate to believe that the legal vindication of the natural right of all citizens to vote would, at this stage of popular intelligence, involve the destruction of civil government. There is nothing in the history of the past that teaches us otherwise. There is little in current history that promises a better result. The right of all men to vote is as ft'ally rec *177 ogtiized in the population of our large centers and cities as can well be done, short of an absolute declaration that all men shall vote, irrespective of qualifications. The result in these centers is political profligacy and violence verging upon anarchy. The influences working out this result are apparent in the utter neglect of all agencies to conserve the virtue, integrity, and wisdom of government, and the appropriation of all agencies calculated to demoralize and debase the integrity of the elector. Institutions of learning, calculated to bring men up to their highest state of political citizenship and indispensable to the qualifications of the mind and morals of the responsible voter, are postponed to the agency of the dram-shop and gambling hell, and men of conscience and capacity are discarded to the promotion of vagabonds to power.
This condition demonstrates that the right to vote ought not to be, and is not, an absolute right. The fact that the practical working of the assumed right would be destructive of civilization is decisive that the right does not exist.
Has it become a constitutional right, under the provisions of the fourteenth and fifteenth amendments of the Constitution ? which provide as follows:
Fourteenth amendment, section 1. — “All persons, born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.”
Fifteenth amendment, section 1. — “The right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any State, on account of race, color, or previous condition of servitude.”
Section 2. — “The Congress shall have power to enforce this article by appropriate legislation.”
It will be seen by the first clause of the fourteenth amendment, that the jflaintiffs, in common with all other persons born iu the United States, are citizens thereof, and, if to make them citizens is to make them voters, the plaintiffs may, of right, vote. It will be inferred from what has already been said, that to make a person a citizen is not to make him *178 or her a voter. All that has been accomplished by this amendment to the Constitution, or by its previous provisions, is to distinguish them from aliens, and make them capable of becoming voters.
. In giving expression to my own judgment, this clause does advance them to full citizenship, and clothes them with the capacity to become voters. The provision ends with the declaration of their citizenship. It is a constitutional provision that does not execute itself. It is the creation of a constitutional condition that requires the' supervention of legislative power in the exercise of legislative discretion to give it effect. The constitutional capability of becoming a voter created by this amendment lies dormant, as in the case of an infant, until made effective by legislative action. Congress, the legislative power of this jurisdiction, as yet, has not seen fit to carry the inchoate right into effect, as is apparent in the law regulating the franchise of this District. When that shall have been done, it will be the pleasure of this court to administer the law as they find it. Until this shall be done, the considerations of fitness and unfitness, merit and demerit, are considerations for the law-making power. The demurrer in these cases is sustained.